**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DEREK SUNDERMAN,

      Plaintiff-Appellant,

v.

WESTAR ENERGY, INC.,

      Defendant-Appellee.

No. 08-3059
(D.C. No. 2:05-CV-02347-JAR)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

Derek Sunderman appeals the district court's entry of summary judgment in favor of his prior employer, Westar Energy, Inc. (Westar), on his claim that he was terminated from his job in retaliation for engaging in protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I. Background.**

In her published "Memorandum and Order Granting Defendant's Motion for Summary Judgment," the district judge thoroughly detailed the complicated factual background pertaining to plaintiff's retaliation claim, *see Sunderman v. Westar Energy, Inc.*, 520 F. Supp. 2d 1269, 1271-76 (D. Kan. 2007), and we commend the district judge for her excellent work in this case. Further, we see no reason to repeat her efforts here.

Accordingly, we incorporate by reference the district judge's lengthy statement of "Uncontroverted Facts" regarding the following matters: (1) Westar's business operations as a public utility company, *id.* at 1271; (2) plaintiff's employment history with Westar and his position as a "Manager, Origination" in Westar's Generation and Marketing Group, *id.* at 1271-72; (3) the background regarding Westar's creation of two Manager, Origination positions and the placement of plaintiff and Tony Delacluyse in the newly-created positions, *id.* at 1272; (4) Westar's 2002-2003 corporate reorganization, *id.* at 1272-75; (5) Westar's elimination of the Manager, Origination positions and the transfer of plaintiff's and Delacluyse's job responsibilities to Westar's Customer Support Group, *id.* at 1275-76; (6) plaintiff's placement in Westar's Career Placement Center program in June 2003, *id.* at 1276; (7) Westar's termination of plaintiff's employment in August 2003, *id.*; (8) plaintiff's complaint to Westar's Human Resources (HR) Department in March 2002

regarding a supervisor's alleged offensive statements of a sexual nature, *id.*;
(9) the written memorandum that plaintiff wrote to his then-supervisor, John
Olsen, on October 28, 2002, in which plaintiff alleged that Westar had retaliated
against him for submitting his complaint to the HR Department, *id.*; (10) the
complaint that plaintiff filed with the Kansas Human Rights Commission (KHRC)
on November 7, 2002, which was later cross-filed with the Equal Employment
Opportunity Commission, in which plaintiff alleged that Westar had reduced his
compensation and suspended him in retaliation for his complaints to the HR
Department and John Olsen, *id.*; and (11) the written reprimand for alleged
insubordination that John Olsen gave plaintiff on January 14, 2003, which was
subsequently removed from plaintiff's personnel file after the matter was
investigated by the HR Department, *id.*

## II.  Summary Judgment Standards.

"We review a district court's grant of summary judgment de novo, applying
the same legal standards used below."  *Burke v. Utah Transit Auth. & Local 382*,
462 F.3d 1253, 1257 (10th Cir. 2006).  Summary judgment is appropriate "if the
pleadings, the discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In applying this
standard, we view the evidence and draw reasonable inferences therefrom in the
light most favorable to the nonmoving party."  *Burke*, 462 F.3d at 1258 (quotation

-3-

omitted). "Moreover, on a motion for summary judgment we cannot evaluate credibility nor can we weigh evidence." *Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742 (10th Cir. 2004) (quotation omitted).

### III. Plaintiff's Retaliation Claim.

"In analyzing retaliation claims [under Title VII], we apply the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). "Pursuant to this test, [plaintiff] bears the initial burden of establishing a prima facie case of retaliation." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008) (quotation omitted). "To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination [under Title VII], (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted).

If plaintiff meets his burden of establishing a prima facie case of retaliation, then Westar "must offer a legitimate, non-retaliatory reason for [its] employment action against [plaintiff]." *Vaughn*, 537 F.3d at 1150 (quotation omitted; first alteration in original). Should Westar satisfy this burden, plaintiff then "bears the ultimate burden of demonstrating that [Westar's] proffered reason

is pretextual." *Id.* (quotation omitted). Plaintiff "may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-[retaliatory] reasons." *Id.* at 1153 (quotation omitted; alteration in original).

In the district court proceedings, plaintiff alleged that Westar eliminated his position as a Manager, Origination in Westar's Generation and Marketing Group and eventually terminated his employment in retaliation for his filing of a complaint with the KHRC on November 7, 2002. In his KHRC complaint, plaintiff had asserted separate retaliation claims against Westar related to his complaint to Westar's HR Department in March 2002 and his written memorandum to John Olsen in October 2002. *See* Aplt. App. at 291-92. Specifically, plaintiff claimed that, in retaliation for his complaints to the HR Department and Olsen, Westar had reduced his compensation and Olsen suspended him on October 31, 2002. *Id.* With regard to plaintiff's claim that he was terminated by Westar in retaliation for filing his KHRC complaint, Westar countered that plaintiff's termination was instead "based on a business decision as to what was best for servicing [Westar's] municipal and retail customer accounts." *Sunderman*, 520 F. Supp. 2d at 1280. In response to this proffered

reason, plaintiff "contend[ed] that several pieces of evidence suggest[ed] that the reason is 'unworthy of belief' and therefore a pretext for retaliation." *Id.*

In her published decision granting Westar's motion for summary judgment, the district judge concluded that plaintiff had failed to establish a prima facie case of retaliation because he had insufficient evidence showing a causal connection between the filing of his complaint with the KHRC and his termination. *Id.* at 1279-82. In the alternative, and also in support of her causation analysis, the district judge concluded that plaintiff had failed to put forth sufficient evidence to create a genuine issue of material fact for trial as to whether Westar's proffered reason for plaintiff's termination was unworthy of belief and thus a pretext for retaliation. *Id.* at 1280-82. With the exception of the matter discussed below, we agree with the district judge's well-reasoned analysis of both the causation and pretext issues, and we therefore affirm the entry of summary judgment in favor of Westar for substantially the same reasons relied on by the district judge. More specifically, we note that we are particularly persuaded by the following reasoning of the district judge with regard to the causation issue:

> The only alleged retaliatory conduct that occurred after the filing of his [complaint with the KHRC] was the January 14, 2003 write-up and plaintiff's job elimination. The write-up was removed from plaintiff's file and did not have any adverse consequences on his employment. Moreover, the write-up was issued by Olsen [in the Generation and Marketing Group]; the evidence is that Wilson [in the Customer Support Group] was the decisionmaker [with regard to plaintiff's termination] and that there was no nexus between the

write-up and plaintiff's termination. This hardly constitutes a pattern.

The Court agrees with Westar that plaintiff cannot prove a prima facie case that he was discharged in retaliation for filing the [complaint] with the KHRC. The decision to reorganize and move plaintiff's job responsibilities back to the Customer Support Group was in process before plaintiff filed administrative charges in November 2002. Both Manager, Origination positions were subject to the reorganization. While Wilson was aware of plaintiff's initial grievance filed with HR, there is no evidence that he knew plaintiff had filed the KHRC [complaint] when he initiated the reorganization or when he made the decision to have the Customer Support Group assume those job responsibilities and not to offer plaintiff one of the open positions in his group. Similarly, while Olsen may have been aware of plaintiff's KHRC [complaint], it is uncontroverted that he was unaware plaintiff['s] and Delacluyse's positions would not be transferred to Wilson as part of the reorganization.

*Id.* at 1279-80.

One point does merit further discussion, however. Plaintiff claims the district judge erred because, in analyzing the causation and pretext issues, she refused to consider the alleged retaliatory acts that occurred before he filed his complaint with the KHRC (*i.e.*, the reduction in plaintiff's compensation and his suspension on October 31, 2002). *See Sunderman*, 520 F. Supp. 2d at 1278-79 ("Because plaintiff did not include his initial grievance [in March 2002] or subsequent memorandum [in October 2002] as protected activity in the Pretrial Order, the Court will not consider either as a basis for plaintiff's retaliation claim, and will instead analyze the causation issue in the context of the formal complaint filed with the KHRC on November 7, 2002."). In her order denying plaintiff's

motion under Fed. R. Civ. P. 59(e) to alter or amend judgment, the district judge

explained her reasoning on this issue as follows:

> In its [Summary Judgment] Order, this Court held that plaintiff may not rely on prior acts of alleged retaliation that predated his administrative charge and declined to consider this as evidence of causation. As discussed at length in the Order, plaintiff generally asserts that he engaged in a protected activity in approximately March [the complaint to the HR Department] and October [the written memorandum to John Olsen] of 2002. Each of these events would be the basis for a separate and distinct claim of retaliation, which plaintiff failed to identify in the Pretrial Order. Accordingly, the Court determined that any alleged protected activity or instances of retaliation prior to the filing of plaintiff's administrative charge were not the basis of plaintiff's claim as set forth in the Pretrial Order and would not be considered as evidence of causation. Plaintiff has failed to show why the Court should reconsider this holding.

> Plaintiff also argues that the Court's Order "ignored" the Supreme Court's ruling in *National Railroad Passenger Corp. v. Morgan*[, 536 U.S. 101 (2002)]. In that hostile work environment case, the Supreme Court held that a continuing violation theory of discrimination is not permitted for claims [based on] discrete acts of discrimination or retaliation. The Court noted, however, that plaintiffs are not barred from using time-barred acts as background evidence in support of a timely claim. Plaintiff argues that the Court's failure to consider what he characterizes as "background evidence" is contrary to the ruling in *Morgan*. Plaintiff's reliance on the statement in *Morgan* regarding background evidence overlooks the analysis of causation in an employment retaliation case. At the prima facie stage of a retaliation case, the plaintiff must show that a causal connection exists between the adverse employment action and the protected activity sufficient to justify an inference of retaliatory motive. In other words, for a protected activity to *cause* the adverse employment action, the adverse action must necessarily occur *after* the protected activity. Here, plaintiff sought to rely on alleged retaliatory acts that occurred *prior to* his protected activity–the filing of his EEOC charge. This "background evidence" is antithetical to

the required showing that engaging in the protected activity caused
or was in someway connected to the alleged retaliatory conduct.

*Sunderman v. Westar Energy, Inc.*, 2008 WL 320376, at \*1-2 (D. Kan. Jan. 30, 2008) (footnotes omitted).

With all due respect, we disagree with the district court's analysis of this issue. Although the plaintiff in *Morgan* did assert a hostile work environment claim, he also asserted separate timely claims based on "discrete discriminatory and retaliatory acts." *Morgan*, 536 U.S. at 104. Further, the Supreme Court was addressing the latter claims when it held that Title VII does not "bar an employee from using . . . prior [time-barred discrete discriminatory and retaliatory] acts as background evidence in support of a timely claim." *Id.* at 113. As a result, while we agree with the district court that plaintiff failed to assert separate causes of action for retaliation based on the retaliatory acts that allegedly followed his complaint to the HR Department in March 2002 and his written memorandum to John Olsen in October 2002 (*i.e.*, the reduction in plaintiff's compensation and plaintiff's suspension), the court should have considered the prior retaliation alleged by plaintiff as background evidence when considering plaintiff's claim that he was terminated in retaliation for filing his complaint with the KHRC. This is especially true here since: (1) plaintiff generally referred to the prior acts of retaliation in his "Factual Contentions" in the Pretrial Order, *see* Aplt. App.

at 15-16; and (2) the prior acts of retaliation are the predicate wrongs in the complaint that plaintiff filed with the KHRC, *id.* at 291-92.

That said, we see no reversible error here. Instead, we conclude that any evidence concerning the alleged reduction in plaintiff's compensation and/or plaintiff's suspension was insufficient, either standing alone or in combination with plaintiff's other evidence, to raise a jury question on the causation and pretext issues that are associated with plaintiff's termination. To begin with, the alleged reduction in plaintiff's compensation was presumably implemented by Westar's Generation and Marketing Group, and there is no evidence in the record linking it to Terry Wilson and the Customer Support Group. Consequently, the alleged reduction in plaintiff's compensation is insufficient to raise an inference of retaliation with regard to the entirely separate decision of Wilson and the Customer Support Group to not transfer plaintiff's position to the Customer Support Group as part of Westar's corporate reorganization in 2002-2003.

Likewise, the fact that plaintiff was suspended on October 31, 2002, by his then-supervisor in the Generation and Marketing Group, John Olsen, allegedly for complaining about retaliation for making his complaint to the HR Department in March 2002, is also insufficient to raise an inference of retaliation with regard to the separate decision of Wilson and the Customer Support Group to not transfer plaintiff's position to the Customer Support Group. Indeed, as the district court found, although Olsen was involved in the reorganization process and, in fact,

was the one who ultimately informed plaintiff and Delacluyse that their job responsibilities were being transferred to the Customer Support Group, it is uncontroverted that "[n]either Olson nor [his supervisor in the Generation and Marketing Group] was involved in the decision by Wilson as to what would happen [to plaintiff] when the Manager, Origination responsibilities were shifted to the Customer Support Group." *Sunderman*, 520 F. Supp. 2d at 1275. Moreover, plaintiff has no evidence to support a "cat's paw" or "rubber stamp" biased-subordinate claim with regard to Olsen and Wilson or any of the other decisionmakers in the Customer Support Group. *See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006) (noting that "'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action," and that "[t]he 'rubber stamp' doctrine . . . refers to a situation in which a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate").

The judgment of the district court is AFFIRMED.  To the extent that

plaintiff is also appealing the district court's denial of his motion under

Fed. R. Civ. P. 59(e) to alter or amend the judgment, we AFFIRM that denial.[1]

Entered for the Court

Michael W. McConnell
Circuit Judge

---

[1]     Although plaintiff's notice of appeal stated that he was appealing the district court's denial of his Rule 59(e) motion, he did not advance any substantive arguments challenging the denial in his opening brief, and he did not file a reply brief.  Consequently, plaintiff has waived any issues pertaining to the denial of his Rule 59(e) motion.